UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED RING DEVICES WITH MAC IDS 5C:47:5E:42:19:2A, 5C:47:5E:46:E1:12, and 34:3E:A4:86:24:80, 9 ST. ALBANS ROAD, CORINNA, MAINE, THAT IS STORED AT PREMISES CONTROLLED BY RING, LLC | No. 1:24-mj-00059-JCN<br><br>**FILED UNDER SEAL** |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

### Filed Under Seal Pursuant to Local Rule 157.6(a)

I, Daniel Zaehringer, being duly sworn, depose and state as follows in support of a search warrant sought pursuant to Federal Rule of Criminal Procedure 41, Title 18, United States Code, Section 3103a, and Title 21, United States Code, Section 879:

### INTRODUCTION

1. I am a Special Agent with the U.S. Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), assigned to the Office of the Resident Agent in Charge in Bangor, Maine. I have been employed by HSI since January 2010. Before that time, I served as a U.S. Customs and Border Protection Officer and a U.S. Border Patrol Agent. As an HSI Special Agent, I am authorized to investigate violations of the laws of the United States, and I have been involved with numerous criminal investigations involving violations of federal law, including those involving drug trafficking and related financial crimes. I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States.

2. As an HSI Special Agent, I have participated in numerous arrest and seizure warrants involving a variety of offenses, including violations pertaining to drug and financial crimes investigations. I have also drafted and executed numerous warrants

for residences, cellular devices, and online accounts to search for and seize physical and digital evidence. Specific to digital evidence, based on my training and experience, I am familiar with how drug trafficking enterprises and individuals associated with them utilize residences, media, and on-line accounts in furtherance of such operations, including through the use of personal home surveillance equipment.

2. This affidavit is submitted in support of an application for a search warrant for information associated with Ring Video Doorbell devices with media access control ("MAC")[1] IDs 5C:47:5E:42:19:2A, 5C:47:5E:46:E1:12, and 34:3E:A4:86:24:80, that is stored at premises controlled by Ring, LLC, ("Ring"), a home security products company owned by Amazon.com, Inc. and headquartered in Santa Monica, California. The information to be searched is described in the following paragraphs and in **Attachment A**. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A), to require Ring to disclose to the Government records and other information in its possession, including video content, pertaining to Ring Video Doorbell devices MAC IDs 5C:47:5E:42:19:2A, 5C:47:5E:46:E1:12, and 34:3E:A4:86:24:80. Such devices were located and identified by Penobscot County Sheriff's Office ("PCSO") personnel during their execution of a lawfully issued state court search warrant on the premises of 9 St. Albans Road, Corinna, Maine, on February 9, 2024.

3. I assisted the PCSO in a support capacity in connection with its execution of the search warrant at 9 St. Albans Road in Corinna. While present at 9 St. Albans

---

[1] I know from my review of Ring's law enforcement guidelines and personal experience that the MAC ID for Ring doorbells and security cameras can be found on the back of such devices.

Road in Corinna on February 9, 2024, I photographed Ring Video Doorbell MAC ID 5C:47:5E:42:19:2A, copies of which are reproduced below.



While present at 9 St. Albans Road in Corinna on February 9, 2024, I photographed Ring Video Doorbell MAC ID 5C:47:5E:46:E1:12, copies of which are reproduced below.



While present at 9 St. Albans Road in Corinna on February 9, 2024, I photographed Ring Video Doorbell MAC ID 34:3E:A4:86:24:80, copies of which are reproduced below.



All three devices were powered off during the search warrant but appeared to have been active prior to the search warrant being executed. The instant search warrant is sought for evidence, contraband, property, and fruits and instrumentalities of violations of Title 21, United States Code, Section 856 (Drug-Involved Premises) and Title 18, United States Code, Sections 1956-57 (Money Laundering). The applied-for warrant would authorize the search and seizure of information, including video content, associated with the Ring Video Doorbell devices, as more particularly described in **Attachment B**.

4.  The facts set forth in this affidavit are based on my personal knowledge, information obtained during my participation in this investigation, information from others, including law enforcement officers, my review of documents and records related to this investigation, and information gained through my training and experience, all of which I believe to be reliable. Therefore, I submit that probable cause exists to search

the information described in **Attachment A** for evidence further described in **Attachment B**. My affidavit is intended to provide the facts necessary for a determination of probable cause for the requested search warrant.

5. The information sought to be searched and seized concerns **the relevant time frame of February 1, 2024 through February 9, 2024**.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).

6. Specifically, the Court is "a district court of the United State . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## GENERAL BACKGROUND CONCERNING RING

7. From my review of publicly available information provided by Ring about its services, including Ring's "Privacy Notice," "Terms of Service," and "Law Enforcement Guidelines," as well as Ring's product description, I am aware of the following about Ring and about the information collected and retained by Ring:

   a. Ring's services enable customers to review, share, and save videos and photos captured by a Ring device and to access such content on a smart phone of personal computer.

   b. Ring collects content and related information that is captured and recorded when its products and services are used, such as video or audio recordings, live video or audio streams, and images.

   c. Ring offers three different subscription plans (Basic, Plus, and Pro), all of which enable video content to be retained for up to 180 days,

        as well as for the capturing of "snapshots" taken from the device. Recorded videos are from every motion event and every event live viewed by the user via the device. Ring's "snapshot capture feature" enables customers to see what is happening in between motion-activated events with recurring photo snapshots taken throughout the day.

    d. Ring videos are stored temporarily in the cloud for up to 180 days. Snapshot photos can be stored for up to 14 days in the cloud.

    e. Ring has access to videos captured by a Ring device only if the user has a current Ring Protect subscription, as detailed above. The subscription enables customers to set the retention period for their Ring device video recordings. Ring retains such videos in accordance with the retention period set by the customer.

    f. Ring Protect plan subscribers can customize their video storage time through the Ring app or Ring.com and adjust the storage time to shorter or longer periods. New devices with a Ring Protect subscription or trial will default to 60 days and devices that are set up with a new owner will default to 60 days of video storage time.

    g. Video storage time does not impact the snapshot capture feature. Snapshot captures are not videos and have their own storage time in the cloud of 7 days with Ring Protect Basic.

## PROBABLE CAUSE

8. HSI, in coordination with the Federal Bureau of Investigation ("FBI") and Drug Enforcement Administration ("DEA"), is investigating individuals, entities, and

premises involved in a suspected large-scale coordinated series of illegal marijuana grows involving approximately 180 properties in the state of Maine, primarily located throughout Somerset, Kennebec, Piscataquis, and Penobscot Counties. The drug-involved premises at issue are believed to operate in violation of 21 U.S.C. § 856(a), in addition to illegally cultivating for distribution marijuana in violation of 21 U.S.C. § 841(a)(1). All such premises under investigation have been confirmed by the Maine Office of Cannabis Policy as lacking any licensed status under which marijuana could be legally cultivated under state law. Associated individuals are suspected of conducting domestic money laundering transactions in violation of 18 U.S.C. § 1956(a)(1), sourced by and through proceeds derived from the specified unlawful activity of illegal marijuana cultivation, and relatedly, conducting monetary transactions in criminally derived property in amounts greater than $10,000 in violation of 18 U.S.C. § 1957.

9. Among the premises suspected by HSI, FBI, and DEA of maintaining illegal marijuana grows, the investigation identified a residential property located at 9 St. Albans Road, Corinna.

10. The DEA issued administrative subpoenas to Central Maine Power ("CMP") seeking electrical usage and billing data for 9 St. Albans Road, Corinna. Information returned by CMP showed that the property had one account with CMP, with the following usage and billing information for January 2024:

| Street Address | Acct. # | Acct. Holder | KWH | Billed |
|---|---|---|---|---|
| Corinna, 9 St. Albans Rd. | 30013113045 | QIAOBIN YANG | 40,887 | $9,796.12 |

Information returned by CMP showed the following usage and billing information for December 2023:

| Street Address | Acct. # | Acct. Holder | KWH | Billed |
|---|---|---|---|---|
| Corinna, 9 St. Albans Rd. | 30013113045 | QIAOBIN YANG | 36,855 | $9,482.09 |

Information returned by CMP showed the following usage and billing information for November 2023:

| Street Address | Acct. # | Acct. Holder | KWH | Billed |
|---|---|---|---|---|
| Corinna, 9 St. Albans Rd. | 30013113045 | QIAOBIN YANG | 38,480 | $9,899.40 |

I know based on my training and experience that large amounts of electrical power are needed in support of indoor marijuana cultivation, due to the use of artificial lighting, heat pumps, distribution fans, air conditioners and humidifiers. The electrical consumption at 9 St. Albans Road, Corinna, is consistent with large-scale illegal marijuana cultivation.

11. I have further reviewed publicly available real property records concerning the acquisition and ownership of 9 St. Albans Road, Corinna.

12. The warranty deed for the property recorded with the Penobscot County Register of Deeds shows that on March 12, 2021, the real property located at 9 St. Albans Road, Corinna, was granted to 336 Apex Inc., a Maine corporation. 336 Apex, Inc., was incorporated in November 2020 but administratively dissolved in August 2021. 336 Apex, Inc. bought the property from HUD for $140,000. Maine corporate records show that the President, Treasurer, Clerk, and sole Director of 336 Apex, Inc. was WEN HUI LI, despite the CMP account holder having a different identity (QIAOBIN YANG).

13. In connection with the federal investigation, I have worked in collaboration with state and local law enforcement, including the PCSO. Through my communications with state and local law enforcement, I learned that the PCSO was investigating illegal marijuana cultivation at 9 St. Albans Road, Corinna.

14. Specifically, I have spoken with and reviewed the written reports of PCSO Detective Sergeant Dayerrick Ireland, and reference here Detective Sergeant Ireland's information and reports.

    a. On November 6, 2023, PCSO personnel met with the Corinna Town Manager, whose offices lie directly across the street from 9 St. Albans Road, Corinna. The Corinna Town Manager explained that on several occasions she could smell the strong odor of marijuana from the residence. As far back a November 2021, the Corinna Town Manager had observed a minivan being backed into the garage door of the residence and saw a man wearing a hazmat suit loading boxes into the minivan.

    b. The Corinna Town Manager in November 2023 also observed heat pumps on the residence and that the windows were all blacked out. I, too, have observed the same.

    c. Detective Sergeant Ireland personally walked the perimeter of 9 St. Albans Road, Corinna, as the Town of Corinna owns the adjoining properties surrounding 9 St. Albans Road, Corinna. He could smell the overpowering scent of marijuana, as well.

15. On February 2, 2024, Detective Sergeant Ireland secured a state search warrant for 9 St. Albans Road, Corinna. The state search warrant, among other items,

authorized the search and seizure of evidence demonstrating the identity, possession, dominion, custody or control by any and all individuals on or in the premises.

16. I attended the execution of the search warrant by the PCSO and other state and local law enforcement on February 9, 2024, in a support capacity.

17. As a result of the search warrant executed by the PCSO at 9 St. Albans Road, Corinna, a total of approximately 3,770 marijuana plants were discovered, found in nine (9) separate rooms within the residence. The plants were being cultivated with grow lamps and extensive watering systems using nutrient rich water sources from chemically enhanced tubs located throughout the house. The plants themselves were elevated about a foot off the ground on a false flooring to accommodate for the watering system. Each grow room's temperature and humidity levels were being regulated by ventilators, humidifiers and dehumidifiers. An extensive network of electrical wiring was exposed throughout the house to accommodate the power needs of each room. The PCSO seized approximately 12 samples from the various grow rooms. PCSO did not perform a presumptive field test at that time, but based on my own experience, the plants seized smelled and appeared to be marijuana.

18. During the execution of the search warrant on February 9, 2024, PCSO personnel photographed the following "Lease Agreement" between 336 Apex, Inc. and JING ZHENG for 9 St. Albans Road, Corinna, showing a "lease term" of August 1, 2022 through July 31, 2024, for $2,000 in rent paid each month:



19. Also notable, the President, Treasurer, Clerk, and sole Director of 336 Apex, Inc. prior to its administrative dissolution, WEN HUI LI, is connected to several other individuals and properties throughout central Maine. The Maine corporate records of 336 Apex, Inc. show that WEN HUI LI used as his address 336 Zions Hill Road, in Dexter. WEN HUI LI also owns 1056 Dover Road, in Garland, which the deed shows was acquired in January 2023. However, the 1056 Dover Road, Garland, deed lists WEN HUI LI's mailing address as 113 Cross Road, in Stetson. WEN HUI LI also registered the below vehicles to 113 Cross Road, Stetson:

| Year | Make | Model | Plate # | From | To |
|------|------|-------|---------|------|-----|
| 2003 | Toyota | Tacoma | 3020YT | Sep-21 | Sep-22 |
| 2009 | Ford | E-250 | 9992YL | Jun-21 | Jun-22 |
| 2004 | Toyota | Sienna | 7763ZB | Apr-22 | Apr-24 |
| 2010 | Honda | Odyssey | 9991YL | Jun-21 | Jun-24 |

A different Maine business entity established in November 2020, 113 Apple, Inc., owns 113 Cross Road, Stetson, which it purchased in January 2021. I have reviewed CMP's January 2024 usage and billing data for 1056 Dover Road, Garland, and 113 Cross Road, Stetson. In January 2024, the 1056 Dover Road, Garland, property used 9,275kWh of electricity for which $2,126.49 was billed. In January 2024, the 113 Cross Road, Stetson, property used a combined 28,966kWh of electricity for which $6,692.17 was billed. WEN HUI LI is shown by CMP records as being the electricity account holder for both 1056 Dover Road, Garland, and 113 Cross Road, Stetson.

* * * * *

20. Based on the foregoing facts, there is probable cause to believe that evidence of violations of 21 U.S.C. § 856 (Drug-Involved Premises) and 18 U.S.C. §§ 1956-57 (Money Laundering) exists as information available to be searched and seized.

21. As detailed above, information stored in connection with the subject Ring account or accounts may provide evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the Government to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, captured video and audio contents, images, comments, and other data collected by products about the surrounding environment can be evidence of who was present at a particular physical location at a relevant time. This geographic and timeline information may tend to either inculpate or exculpate those connected to the crime.

22. Based on the information above, Ring's servers are likely to contain the types of material described above, including stored video and audio content and information concerning the use of Ring Video Doorbell devices MAC IDs 5C:47:5E:42:19:2A, 5C:47:5E:46:E1:12, and 34:3E:A4:86:24:80, at 9 St. Albans Road, Corinna, Maine. In my training and experience, such information may constitute evidence of the crimes under investigation.

23. For example, the subject Ring devices were located at a premises actively engaged in large-scale illegal marijuana cultivation. I know from my training and experience, as well as from information provided to me by other experienced federal and state drug investigators, that such extensive marijuana cultivation operations are complex and often require outside coordination provided by multiple involved individuals, rather than a single grower.

24. Therefore, the grow operation at 9 St. Albans, Corinna, likely required outside coordination and communication with other participants or co-conspirators, including those associated with other possible illegal marijuana grows in central Maine. I believe that stored video and audio content and information associated with the Ring devices will show the identities and conduct of participants or co-conspirators concerning the illegal grow operations.

25. Specifically, the illegal grow operations at issue required labor, supplies, and transportation in connection with the cultivation, harvesting, processing, and distribution of the marijuana. I believe that stored video and audio content and information associated with the Ring devices will show such activities. In particular, I believe that such content will show either video recordings or still photo captures of the participants in the illegal activity, potentially including WEN HUI LI (the owner),

QIAOBIN YANG (the power records subscriber), JING ZHENG (the lessee), and other associated employees, agents, laborers, and individuals known and unknown.

26.  Finally, given the for-profit nature of illegal marijuana cultivation, and the likelihood that illicit proceeds were generated from such activities, I believe that stored video and audio content and information associated with the Ring devices relevant to the monetary proceeds of the marijuana enterprise may also be present and subject to search and seizure.

## **CONCLUSION**

27.  Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that evidence of such crimes, more fully described in **Attachment B**, are located in the information described in **Attachment A**. I respectfully request that this Court issue a search warrant for the information described in **Attachment A**, authorizing the seizure and search of the items described in **Attachment B**.

28.  I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require Ring to disclose to the Government copies of the records and other information (including the content of communications) particularly described in Section I of **Attachment B**. Upon receipt of the information described in Section I of **Attachment B**, Government-authorized persons will review that information to locate the items described in Section II of **Attachment B**.

29.  Following execution of the state search warrant by the PCSO, the U.S. Attorney's Office for the District of Maine submitted a preservation request, which Ring assigned Amazon Reference Number CRIM 1310308 2024 DS. Upon receipt of a lawful

and binding request Ring preserves requested information for up to 90 days. *See* https://ring.com/support/articles/oi8t6/Learn-About-Ring-Law-Enforcement-Guidelines.

30. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The Government will execute this warrant by serving it on Ring. Because the warrant will be served on Ring, who will then compile the requested records at a time convenient to it, and then be reviewed by Government-authorized persons, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

_____
Daniel Zaehringer
HSI Special Agent

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedure

Date: Feb 26 2024

City and state: Bangor, ME

_____
Judge's signature

John C Nivison U.S. Magistrate Judge
Printed name and title